IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

LOUIS BANG for SAB,

                 Plaintiff,                 OPINION AND ORDER

   v.

                                                        12-cv-629-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                 Defendant.
---

On behalf of his adopted minor son, SAB, plaintiff Louis Bang seeks judicial review of a final decision by the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Although SAB was found to be entitled to disability benefits from within one year of the date his benefits application was filed in 2009, he was denied these benefits backdated as far as 2001, when SAB became Bang's stepson. Bang now seeks an order awarding disability benefits payable to SAB from an earlier onset date or, in the alternative, remanding the case back to the Commissioner for further proceedings. Because there is substantial evidence in the record to support the administrative law judge's ("ALJ") findings, including credibility determinations, the court will affirm the Commissioner's decision and dismiss the case.

FACTS[*]

I.     Procedural Background

Bang began receiving disability insurance benefits around 1991. (AR 83.) In September 2001, Bang married Evelyn Denise Bang (Mrs. Bang), the mother of SAB.

---
[*] The following facts are drawn from the administrative record (AR).

1

(AR 92.) SAB was 4 years old at the time of the marriage. On May 3, 2007, a new Social Security card was issued to SAB. (AR 27.) At or about that time, Bang started the formal adoption process. Bang's adoption of SAB was finalized in May 2009. (AR 78-79.)

On March 5, 2009, Bang filed an application for child's insurance benefits on behalf of his then stepson, SAB. (AR 13-15.) The application was granted on March 13, 2009, entitling SAB to benefits beginning in March 2008 per regulation.[1] (AR 16.) Bang filed a request for reconsideration, seeking benefits based on an earlier date of entitlement. (AR 19, 23.)

After his request for reconsideration was dismissed, Bang requested a hearing date before an ALJ. (AR 19-20, 21.) On October 29, 2010, the ALJ held a hearing at which Bang and his wife both testified. (AR 70-107.)

In a decision dated January 11, 2011, the ALJ found that SAB was not entitled to an application filing date earlier than March 5, 2009, on his application for child's insurance benefits. (AR 10-12.) The ALJ specifically found that an earlier filing date could not be established based on misinformation under 20 C.F.R. § 404.633. (AR 10-11.) The ALJ's decision became the final decision of the Commissioner of Social Security Commissioner when the Appeals Council denied Bang's request for review. (AR 2-4.)

---

[1] If an application for child's benefits based on the earnings record of a person entitled to disability benefits is filed after the first month the child could have been entitled to them, he may receive benefits for up to 12 months immediately before the month in which the application is filed. *See* 20 C.F.R. § 404.621(a).

*See* 20 C.F.R. § 404.981. Bang now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II.         Relevant Factual Allegations

At the October 2010 hearing, Bang provided the following facts regarding his previous visits to the Social Security Office seeking benefits for SAB. On October 3, 2001, Mr. and Mrs. Bang went to the Social Security Office in Duluth, Minnesota, to change the name on her Social Security record to reflect their marriage. (AR 85, 93.) At that time, Bang testified that he asked a clerk[2] if SAB, who was his stepchild, would be entitled to benefits under Bang's disability. (AR 85.) According to Bang, the clerk replied that there were no benefits for stepchildren, only adopted or natural children. (AR 86, 91.)

On May 3, 2007, Mr. and Mrs. Bang went to the Social Security Office in Superior, Wisconsin, to obtain a copy of SAB's Social Security card. (AR 87, 93.) Bang testified that he again asked a clerk if his stepchild was entitled to benefits on account of Bang's disability. (AR 87.) Again, the clerk said no. Bang then asked if SAB would be entitled to benefits if he was adopted. (AR 87.) The clerk purportedly answered in the affirmative. (AR 87.)

Around March 2009, Bang went back to the Social Security Office in Duluth. (AR 88, 93.) At that time, Bang told the clerk that he wanted to apply for benefits for

---

2 Bang did not identify the person he spoke to, other than to say that he spoke with a clerk at the Social Security Office in Duluth.

3

his stepchild. (AR 88.) Bank was again told there were no benefits for stepchildren. (AR 88.) At Bang's insistence, the clerk gave him an appointment. (AR 89.) On March 5, 2009, Bang returned to the Social Security Office in Duluth and applied for child's insurance benefits for his stepson. (AR 89.) That application was approved shortly thereafter. (*Id*.)

III.     The ALJ and Appeal Council Decisions

The key questions before the ALJ were whether Bang actually visited Social Security Offices in 2001 and 2007, and if so, whether Social Security Administration ("SSA") employees had in fact misinformed Bang about the availability of disability insurance benefits for his then-stepchild, SAB.

In issuing his decision on January 11, 2011, Administrative Law Judge Roger Thomas found that were was no documentation showing that Bang attempted to apply for child's benefits for SAB in May 2007. The ALJ futher found that that if Bang had applied in October 2001, the application would have been denied anyway, and that it was "unlikely that two Social Security Administration employees would *preclude* Mr. Bang from filing applications." (AR 7-12.) As such, the ALJ concluded "an earlier onset date was not appropriate." (*Id.*)

Bang sought review of this unfavorable decision by the Appeals Council. (AR 6, 65-69.) On July 16, 2012, the Appeals Council denied any further review, stating:

> In 2001, no benefits would have been payable to [the child] because you had been married to his mother for less than a

>year. Although benefits would have been payable in 2007 if you were providing one-half of (the child's) *support*, the Administrative Law Judge had to assess the credibility of your assertion that employees told you in blanket statements that we did not pay benefits to stepchildren. Because paying benefits to stepchildren is a rather common occurrence, the Administrative Law Judge did not believe it likely that you were told on different occasions over a span of 6 years that we did not pay benefits to stepchildren.

(AR 2-4) (emphasis added.)

Following this decision, Bang filed the pending complaint for judicial review pursuant to 42 U.S.C. §405(g). He argues in particular that the ALJ erred in determining that SAB was not entitled to benefits back to 2001 or at least to 2007, when Bang enquired about his eligibility for those benefits and was misinformed by SSA employees.

OPINION

Ordinarily, a federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). In particular, credibility determinations are generally within the province of the ALJ. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination is "afforded special deference" because the ALJ is in the best position to see and hear the witness and determine credibility. *Id.* The court will only overturn an ALJ's credibility determination if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

Ultimately, "[w]here conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted). As set forth below, because the ALJ's credibility determination here is not rendered "patently wrong" by the record, and the conflicting evidence generally makes the ALJ's findings and conclusions open to reasonable debate, this court must affirm.[3]

### A. Whether SAB was Entitled to Earlier Disability Insurance Benefits

Section 202(d) of the Social Security Act provides for the payment of insurance benefits to a child of an insured individual. *See* 42 U.S.C. § 402(d). Under section 216(e) the Act and relevant regulations, the term "child" includes a stepchild. *See* 42 U.S.C. § 416(e); 20 C.F.R. § 404.354. To be eligible for benefits, however, the claimant must show that (1) he filed an application; and (2) the child is dependent on the insured, is unmarried, and meets the age requirement. *See* 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350.

As to the second requirement, there is no dispute that SAB would have been entitled to benefits at an earlier date had Bang filed an application for child insurance benefits on SAB's behalf in 2001 or 2007. As for the first requirement, Bang argues that

---

[3] Tellingly, this is one of those few cases where the Appeals Council also provided a meaningful review of the ALJ's decision before a complaint was filed in this court.

he should be excused for not applying for benefits earlier because he was misinformed by SSA employees, who told him in 2001 and 2007 that stepchildren were not eligible to receive such benefits.

The Act specifically provides that the Commissioner may backdate an application for benefits if an applicant is misinformed by an SSA employee about his eligibility to receive benefits. *See* 42 U.S.C. § 402(j)(5); 20 C.F.C. § 404.633. As a result, the key issue on appeal is whether the ALJ erred in finding incredible Bang's claim that, but for misinformation provided by SSA employees in 2001, and again in 2007, he would have applied for child insurance benefits on SAB's behalf at an earlier date.

To meet his burden of proof that he was misinformed by an SSA employee, a claimant should produce "preferred evidence" that documents the misinformation, including a *letter or records* of a telephone call or in person contact with the agency. *See* 42 U.S.C. § 402(j)(5); 20 C.F.R. § 404.633(c), (d)(1)-(2) (emphasis added).[4] In the absence of preferred evidence, the claimant may offer other evidence (*e.g.*, an individual's statements about alleged misinformation or statements from others who were present). *See id.* § 404.633(d). Notwithstanding this, the regulation states expressly that SSA: "will *not* find that we gave you misinformation . . . based solely on your statements." *Id.* § 404.633(d)(2) (emphasis added).

Here, as the ALJ found, the only direct evidence supporting Bang's claim that he was misinformed by SSA employees *is* his own, self-serving statements. This is arguably

---

[4] *See Costello v. Astrue*, 499 F.3d 648, 650 (7th Cir. 2007).

dispositive of the instant case given that the regulations state a claimant cannot provide the sole basis to support a misinformation claim. 20 C.F.R. § 404.633(d)(2). Even if not, Bang's oral evidence is further undercut by his inability to remember the name of the SSA employees who he claims provided the wrong information in 2001 or 2007, respectively. (AR 86, 88.) Indeed, as the Commissioner suggests, the ALJ's adverse credibility determination was bolstered generally by Bank's inability to provide any detail regarding the purported misstatements made by the unnamed SSA clerks regarding a stepchild's eligibility for benefits.[5] This is not to say that Bang did not attend the Social Security offices at all on October 3, 2001 and May 3, 2007. What it does say is that the ALJ was free to find Bang's self-serving, after-the-fact recall as to the precise nature of his conversation with the SSA employees was at least suspect -- a determination that is strictly limited to the province of the ALJ. *See Shramek* 226 F.3d at 811; *see also* 20 C.F.R. § 404.633(d)(2)(iv) (stating that in the context of a misinformation claim, the ALJ will evaluate "the credibility and the validity of your allegations in conjunction with other relevant information"). Tellingly, Bang chose to offer no reply in the face of just such a cogent argument by the Commissioner's brief in support of the ALJ's decision.

---

[5] On a more granular level: if in 2001, Bang was so sure that the clerk told him that that there were only benefits for adopted children, not for stepchildren, (AR 91), why did Bang then again ask whether SAB could get the same benefits in 2007? One obvious answer is that he hoped the law or regulations may have changed in the interim, but then why not pursue the application more formally, rather than rely on off-the-cuff comments of a single staff person. Like others, the answers to these questions were appropriately part of the ALJ's credibility assessment. Tellingly, Bang's briefing does little, if anything, to cite case law that would permit a district court to re-weigh evidence that has been before the ALJ in the first instance, much less rely on self-serving hearsay evidence that the regulations prohibit even be considered without some paper trail.

As the ALJ also points out, Bang failed to provide *any* written evidence of his having asked about benefits for his stepson, much less that he received an unfavorable response. Although Bang does supply a marriage certificate dated October 3, 2001 -- which was the same day he said his new wife visited the Social Security Office -- this evidence only supports the theory that Bang was at the office to change Mrs. Bang's social security card.[6]  Certainly, there are no documents that support Bang's claim that a SSA employee expressly precluded him from applying for benefits on behalf of his then step-child other than his own prohibited, oral representations. As such, an appeal from the ALJ's refusal to back-date the application to October 3, 2001, is meritless.

The denial of back-dating to May 2007 is only a slightly closer call. On this occasion, a relevant, contemporaneous document was offered into evidence -- SAB's social security card. There is no dispute that the purpose of the May 2007 visit was to obtain a social security card for SAB because Bang was commencing the adoption process. While it is possible that Bang asked whether his then stepchild was entitled to benefits even before adoption, the opposite is equally credible. After all, Bang was apparently already committed to adoption, which he knew *would* make SAB eligible for benefits.

The ALJ also found that it was "unlikely that two Social Security Administration employees [first in 2001, then 2007] would *preclude* Bang from filing applications." (AR

---

[6] As the Appeals Council also points out: "In 2001, no benefits would have been payable to [the child] because [Bang] had been married to his mother for less than a year." (AR 3-4.)

7.) Although reasonable minds may differ on how reasonable or likely this was, the ALJ's decision need only be supported by substantial evidence. *See Terry*, 580 F.3d at 475. While the evidence here is circumstantial, it is unquestionably "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).

This conclusion is reinforced in light of: (1) the dearth of preferred documentary evidence to counter the Commissioner's position; and (2) the fact that the inference is so heavily predicated upon the ALJ's credibility assessment of Bang himself. The latter point was also noted by the Appeals Council (AR 3-4), which affirmed the ALJ's refusal to credit Bang's unsubstantiated assertions of misinformation. Bang cannot expect this court to reweigh evidence so to discharge his burden of proof. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (courts "do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute their own judgment for that of the Commissioner.").

Finally, Bang's case is not dissimilar to the Seventh Circuit's recent holding in *Donnelly v. Colvin*, 561 F. App'x 524 (7th Cir. 2014). In that case, the claimant testified that an SSA employee misinformed him in March of 2004 about his eligibility for widower-insurance benefits and again in 2005.[7] In applying 20 C.F.R. § 404.633(c), the Seventh Circuit affirmed the ALJ's decision denying the claim. The Seventh Circuit held

---

[7] The claimant in *Donnelly* also testified that the Social Security Administration lost his March 2004 application. *See Donnelly*, 561 F. App'x 524 at 525.

that the ALJ properly found that the claimant failed to submit sufficient evidence to corroborate his assertions and that the ALJ's decision was supported by "substantial evidence." *Donnelly*, 561 F. App'x at 526. The court explained that because Donnelly had submitted "primarily" his own written statements to support his claim, and because the agency may not base a misinformation claim solely on a claimant's statements, Donnelly's claim was properly rejected.[8]  *Id.*  Like *Donnelly,* the primary deficiency in Bang's claim (regarding both the 2001 and 2007 visits) is the same: oral evidence cannot, without more, substantiate a misinformation claim.[9]

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is **AFFIRMED**, and that plaintiff's appeal is **DISMISSED**.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of January, 2015.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge

---

[8] There was also a greater volume of written evidence in the *Donnelly* case than present here. Despite such evidence, the ALJ's credibility assessment, coupled with the exacting standard adopted in 20 C.F.R. § 404.633(d)(2), were enough to defeat Donnelly's claim. See *Donnelly*, 561 F. App'x at 526.  Such facts further undercut Bang's position.

[9] The *Donnelly* case was one in the distinct minority of those affirmed before the Seventh Circuit. *See Shankle v. Colvin*, No. 14-CV-380-JPS, 2014 WL 6686626, at *5 (E.D. Wis. Nov. 26, 2014) (collating list of cases and noting that as of November 26, 2014, the Seventh Circuit reversed ALJ opinions 75% of the time.).